**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**TED JAMES JOHNSON, JR.,**

      **Petitioner,**

**v.**                                **Civil Action No. 2:15cv83**
                                                 **(Judge Bailey)**

**CHARLES WILLIAMS, Warden,[1]**

      **Respondent.**

## REPORT AND RECOMMENDATION

On November 12, 2015, the *pro se* petitioner, an inmate then-incarcerated at FCI Gilmer[2] in Glenville, West Virginia, filed a petition under 28 U.S.C. § 2241, challenging his conviction and sentence, imposed in the United States District Court for the Western District of Virginia. ECF No. 1. Along with his petition, he filed a motion to proceed *in forma pauperis* ("IFP"), a copy of his Prisoner Trust Account Report ("PTAR") with attached Ledger Sheet, and his $5.00 filing fee.[3]

On August 2, 2016, the undersigned ordered Respondent to show cause as to why the writ should not be granted. ECF No. 10. On August 17, 2016, Respondent filed a Motion to Dismiss and Response to Order to Show Cause, with supporting memorandum and attached exhibits. ECF No. 10 & 11. A Roseboro[4] Notice was issued on August 24, 2016, advising Petitioner of his right to file a response to Respondent's dispositive motion. ECF No. 12. On

---

[1] At the time petitioner filed his §2241 petition, Charles Williams was the warden at FCI Gilmer. Subsequently, Jennifer Saad was named as warden of FCI Gilmer. Pursuant to Fed.R.Civ.P. 25(d)(1), Jennifer Saad is automatically substituted as the respondent in this action.

[2] Petitioner is now incarcerated at FMC Butner in Butner, North Carolina.

[3] The Clerk of Court terminated the motion to proceed as a pauper the following day.

[4] Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975).

September 2, 2016, Petitioner filed his response, titled Petitioner's Reply to Respondent's Motion to Dismiss Petitioner's § 2241. On September 15, 2016, Petitioner filed another copy of his Petitioner's Reply to Respondent's Motion to Dismiss Petitioner's § 2241, identical in every way to his September 2, 2016 response, with the exception of a two-page prefatory introduction and certificate of service. ECF No. 17.

This matter is pending before me for a Report and Recommendation pursuant to LR PL P 2.

## I. Factual and Procedural History[5]

### A. Conviction and Sentence

In 1992, in the Western District of Virginia, Petitioner and a co-conspirator began a partnership, portraying themselves as commodity pool operators in a Ponzi scheme that pooled and traded investor funds in the commodities futures financial market. In late 2002, at the same time Petitioner's ability to obtain new funds was dwindling, demands for repayment were increasing, and the Ponzi scheme collapsed.

On October 31, 2005, a search warrant was executed in Criminal Case No. 7:07cr48. On July 26, 2007, the grand jury returned a multi-count indictment charging Petitioner and his co-conspirator in Counts One, Two, Three, Four, Five, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen, Eighteen, and Nineteen with Mail Fraud, in violation of 18 U.S.C. §§1341 and 2; in Count Twenty and Twenty-One, with Wire Fraud, in violation of 18 U.S.C. §§ 1343 and 2; in Count Twenty-Two with Money Laundering Conspiracy, in violation of 18 U.S.C. § 1956(h); Count Twenty-Three, Twenty-Four, Twenty-

---

[5] The citations in this section are to petitioner's underlying criminal case in the Western District of Virginia, Case No. 7:07cr48-1. The description of the facts of Petitioner's underlying crime were taken from the Fourth Circuit Court of Appeal's Opinion denying his appeal. See United States v. Johnson, 405 Fed. Appx. 746, 751 (4th Cir. Dec. 23, 2010)(per curiam).

Five, Twenty-Six, Money Laundering, in violation of 18 U.S.C. §§1956(a)(1)(B)(i) and 2; in Counts Twenty-Seven to Thirty-Four with Money Laundering in violation of 18 U.S.C. §§ 1957 and 2; in Count Thirty-Five with Securities Fraud, in violation of 15 U.S.C. §§ 78j(b), 78ff and 18 U.S.C. § 2; in Count Thirty-Six, with Unregistered Commodity Pool Operator, in violation of 7 U.S.C. §§ 6m(1), 6n, 13(a)(5) and 18 U.S.C. § 2; in Count Thirty-Seven, with Embezzlement of Commodity Pool Funds, in violation of 7 U.S.C. § 13(a)(1) and 18 U.S.C. § 2; in Count Thirty-Eight, with Fraud by Commodity Pool Operators, in violation of 7 U.S.C. § 6o(1) and 18 U.S.C. § 2; in Count Thirty-Nine, Forty, and Forty-One with False Oath in Bankruptcy, in violation of 18 U.S.C. § 152(2); and in Count Forty-Two with a forfeiture allegation. ECF No. 7.

On October 16, 2008, after an 11-day jury trial,[6] Petitioner was convicted of eighteen counts of mail fraud, two counts of wire fraud, three securities frauds counts related to operating a commodity pool, one count of conspiracy to commit money laundering, four substantive money laundering counts, and eight counts of engaging in monetary transactions in property derived from specified unlawful activities.

On April 28, 2009, Petitioner was sentenced to a total term of 200 months' imprisonment,[7] consisting of 180 months on each of Counts 2 - 26 and 35, to be served concurrently; 120 months on each of Counts 27 - 34 to be served concurrently; and 20 months on each of Counts 36 - 38 to be served concurrently with each other, but consecutively to the terms imposed on Counts 2 – 35, to be followed by a 3-year term of supervised release on each of counts 2 – 38, all terms to run concurrently. Petitioner was ordered to pay a Special Assessment of $3,700.00, and to pay restitution of $2,910,660.79 jointly and severally with his co-defendant.

---

[6] Only Petitioner went to trial; his co-defendant entered a plea to six of the counts. See ECF No. 50.

[7] The total sentence was sixty-two months below the low end of the Guideline range. See ECF No. 203, FN 4 at 6.

ECF No. 125 at 2 and ECF 130 at 4. A forfeiture order was also entered jointly against Petitioner and his co-defendant, seeking a money judgment in the amount of $3,799,125.69 and certain real estate. ECF No. 130-1.

## B. Direct Appeal

Johnson appealed, arguing that there was insufficient evidence to prove his guilt on several of his money laundering charges, based on his interpretation of United States v. Santos,[8] and insufficient evidence to support his convictions on three counts of operating a commodity pool during the 5-year statute of limitations period.

On December 23, 2010, by unpublished opinion, the United States Court of Appeals for the Fourth Circuit affirmed. United States v. Johnson, 405 Fed. Appx. 746, 751 (4th Cir. Dec. 23, 2010)(per curiam). On January 21, 2011, Johnson's motion for rehearing and rehearing *en banc* was denied. On May 31, 2011, Johnson's petition for writ of *certiorari* was denied.

## C. §2255 Motions

## First §2255 Motion to Vacate

On May 31, 2012, Petitioner filed his first Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [ECF No. 192], alleging the following grounds for relief:

1) trial counsel provided ineffective assistance at trial and on appeal by failing to challenge the government's seizure and use of "religious journals"[9] and other private papers and records obtained in the search of his residence pursuant to the search warrant, because

      a) the search warrant failed to identify the religious journals as a target of the search;

      b) Johnson authored the "religious journals" in "obedience to the teachings of the Church of Jesus Christ of Latter Day Saints," and thus, their use "constitutes an

---

[8] United States v. Santos, 553 U.S. 507 (2008).

[9] The "religious journals" contained "considerable evidence of the receipt, disbursement, or use of funds from investors or note holders" from 1997 through 2004. See ECF No. 203 at 4.

c) the use of the journals at trial violated his right against self-incrimination.

2) the use of the religious journal entries at Grand Jury violated the 1st, 4th, 5th, and 6th Amendments:

3) the trial court and Fourth Circuit Court of Appeals erred in relying on the religious journal entries to establish Commodity Pool Operator violations; and

4) seizure and use of private papers violated Johnson's 1st, 4th, 5th, and 6th Amendment rights.

5) The Harmless Error Doctrine did not apply or operate to deny Johnson the relief requested.

6) Prosecutorial misconduct occurred when the government caused the seizure and use of Johnson's religious journals and private papers, warranting reversal of his convictions.

7) Johnson's 200-month sentence was excessive, unreasonable, and constituted cruel and unusual punishment under the Eighth Amendment.

By Memorandum Opinion and Order entered December 28, 2012, Johnson's § 2255 motion was denied. ECF No. 203 and 204. Johnson appealed. By unpublished opinion, the Fourth Circuit Court of Appeals denied a certificate of appealability, denied Johnson leave to proceed as a pauper and dismissed the appeal. United States v. Johnson, 2013 U.S. App. LEXIS 8183 (4th Cir. Apr. 23, 2013) (*per curiam*). On July 22, 2013, Johnson's motion for rehearing and rehearing *en banc* was denied. Likewise, his petition for writ of *certiorari* with the United States Supreme Court was denied on January 27, 2014.

**Mandamus/§2244 Motion**

On July 22, 2014, Johnson filed a "Motion for Writ of Mandamus/Second or Successive § 2255" in the United States Court of Appeals for the Fourth Circuit, claiming bias on the part of the district court in denying relief on his previous § 2255 motion and requesting authorization to file a successive § 2255 motion. On October 23, 2014, by unpublished opinion, the motion was

denied. The Fourth Circuit concluded that Johnson was not entitled to mandamus relief and denied him authorization to file a successive § 2255 motion. <u>In re: Ted James Johnson, Jr.</u>, No. 14-1734 (4th Cir. Oct. 23, 2014)(*per curiam*).  On December 30, 2014, Johnson's motion for rehearing and rehearing *en banc* was denied.

## <u>Second §2255 Motion to Vacate</u>

On August 5, 2014, in the District Court for the Western District of Virginia, Johnson filed a "Motion for Writ of Mandamus/Second or Successive § 2255" that was docketed as a motion to vacate pursuant to 28 U.S.C. § 2255. In it, Johnson sought a writ of mandamus, claiming improper use of his religious journals and other private papers as business records; bias on the part of the District Judge; a Due Process violation; a prejudicial and constitutionally-prohibited refusal to disclose materials used by the grand jury against Petitioner; and newly-discovered evidence, in the form of a close personal friendship between Petitioner's trial counsel and the District Judge who denied relief on Johnson's previous § 2255 motion alleging ineffectiveness of that counsel, and requesting permission to file a successive § 2255 motion. Given that the Fourth Circuit had just denied the same motion Johnson had filed there, on November 17, 2014, the district court found no basis to grant the motion and denied it.  ECF No. 220.

## II. <u>The Pleadings</u>

### A. <u>Claims Raised by Petitioner</u>

Petitioner raises two[10] grounds for relief, contending that:

1) pursuant to the Fourth Circuit's decision in <u>United States v. Simmons</u>,[11] he is innocent of all of the counts[12] of money laundering he was convicted of, because an

---

[10] The petition actually lists three grounds for relief, but the third is merely a restatement of Johnson's claim for relief. <u>See</u> ECF No. 1 at 6 and 14.

[11] <u>United States v. Simmons</u>, 737 F.3d 319 (4th Cir. 2013).

accused cannot be convicted of money laundering while paying out expenses of an alleged Ponzi scheme [ECF No. 1 at 10]; and

2) pursuant to the Fourth Circuit's decision in <u>Simmons</u> he is also innocent of all mail and wire fraud convictions.  <u>Id.</u> at 13.

As relief, Petitioner requests that this court vacate his convictions on Counts Two – Nineteen (mail fraud), Counts Twenty – Twenty-One (wire fraud), and Counts Twenty-Two – Thirty-Four money laundering); grant him leave to file additional pages; and grant him *in forma pauperis* status to have counsel appointed. Further, upon the vacating of the mail and wire fraud and money laundering counts, because he contends he has already "served over 81 months of sentences that should be vacated[,]" [<u>id.</u> at 8] he requests that this court order his immediate release and re-sentence him, but deny any attempt by the government for "*forum conveniens* [sic] transfer" to the Western District of Virginia. <u>Id.</u> at 8. Finally, he requests permission to file exhibits. <u>Id.</u> at 8 and 14.

Petitioner asserts that his remedy by way of §2255 is inadequate or ineffective because the <u>Simmons</u> case constitutes a "substantive change of law" which, while not satisfying the gatekeeping provisions of § 2255, does satisfy <u>Jones</u>, 226 F.3d 328 (4th Cir.) [sic]." <u>Id.</u> at 9.

**B. <u>Respondent's Motion to Dismiss and Response to Show Cause Order</u>**

The Respondent argues that the petition should be dismissed because

1) Petitioner's arguments relating to his money laundering convictions do not merit relief under § 2241 [ECF No. 11 at 6 – 7];

2) the state of the law was unsettled at the time of Petitioner's convictions [<u>id.</u> at 7 – 9];

3) the conduct which Petitioner was convicted of is criminal [<u>id.</u> at 9 – 10];

4) Petitioner's claims regarding his mail and wire fraud convictions do not merit relief under § 2241 [<u>id.</u> at 10 – 11]; and

---

[12] Petitioner appears to include Count Twenty-Two, his one conviction for money laundering conspiracy, in with his reference to "all" money laundering convictions.

5) Petitioner failed to establish that he has exhausted his administrative remedies. Id. at 11.

**C. Petitioner's Response**

Petitioner reiterates his arguments and attempts to refute the Respondent's on the same. ECF No. 16 at 2 – 9. As relief, he requests that all of his money laundering convictions be vacated and dismissed; all his Ponzi scheme fraud convictions be dismissed; and that he be re-sentenced in the Northern District of West Virginia. Id. at 9 – 10.

**D. Petitioner's Second Response**

Petitioner's second response is merely an identical copy of his first, with the exception of a two-page introduction at the beginning, in which he objects to the "Defendant's Roseboro Notice" which he characterizes as "frivolous." ECF No. 17 at 1.

### III. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of

what the ... claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." <u>Conley</u>, 355 U.S. at 45-46. In <u>Twombly</u>, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Conley</u>, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," <u>id.</u> (citations omitted), to one that is "plausible on its face," <u>id.</u> at 570, rather than merely "conceivable." <u>Id.</u> Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." <u>Bass v. E.I. DuPont de Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir. 2003) (citing <u>Dickson v. Microsoft Corp.</u>, 309 F.3d 193, 213 (4th Cir. 2002); <u>Iodice v. United States</u>, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in <u>Ashcroft v. Iqbal</u>, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. <u>Id.</u>

Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. <u>Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.</u>, 267 F.3d 30 (1st Cir.

2001)(cited with approval in <u>Witthohn v. Federal Ins. Co.</u>, 164 Fed. Appx. 395 (4th Cir. 2006) (unpublished)). There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint. Specifically, a court may consider official public records, "documents incorporated into the complaint by reference, and matters of which the court may take judicial notice," or sources "whose accuracy cannot reasonably be questioned." <u>Katyle v. Penn Nat'l Gaming, Inc.</u>, 637 F.3d 462 (4th Cir. 2011).

## B. <u>Summary Judgment</u>

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. <u>See</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 80 (1977). So too, has the Fourth Circuit Court of Appeals. <u>Maynard v. Dixon</u>, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. <u>Miller v. Federal Deposit Ins. Corp.</u>, 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." <u>Id.</u> "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987).

Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. <u>Anderson</u>, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Industrial Co. V. Zenith Radio Corp</u>., 475 U.S. 574, 587-88 1986.

As a *pro se* litigant, petitioner's pleadings are accorded liberal construction and held to less stringent standard than formal pleadings drafted by attorneys. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007) (*per curiam*). However, even under this less stringent standard, the petition in this case is subject to summary dismissal. The requirement of liberal construction does not mean that the Court can ignore a clear failure to allege facts which set forth a claim cognizable in a federal district court. <u>See</u> <u>Weller v. Dep't of Social Servs</u>., 901 F.2d 387 (4th Cir. 1990).

### IV. <u>Analysis</u>

The primary means of collaterally attacking a federal conviction and sentence is through a motion pursuant to 28 U.S.C. §2255. A §2241 petition is used to attack the manner in which a sentence is executed. Thus, a §2241 petition that challenges a federal conviction and/or sentence is properly construed to be a §2255 motion. The only exception to this conclusion is where a §2241 petition attacking a federal conviction and sentence is entertained because the petitioner can satisfy the requirements of the "savings clause" in §2255. Section 2255 states:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, *unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.*

28 U.S.C. §2255 (emphasis added).

The law is clearly developed, however, that merely because relief has become unavailable under §2255 because of a limitation bar, the prohibition against successive petitions, or a procedural bar due to failure to raise the issue on direct appeal, does not demonstrate that the §2255 remedy is inadequate or ineffective. In re Vial, 115 F. 3d 1192, 1194 (4th Cir. 1997). Moreover, in Jones, the Fourth Circuit held that:

> §2255 is inadequate and ineffective to test the legality of a conviction when: (1) at the time of the conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first §2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gate-keeping provisions[13] of §2255 because the new rule is not one of constitutional law.

*In re* Jones, 226 F.3d 328, 333-334 (4th Cir. 2000).

Therefore, the remedy provided under §2255(e) opens only a narrow door for a prisoner to challenge the validity of his conviction or sentence under §2241. Based on the language in Jones it is clear the Fourth Circuit contemplated a situation in which a prisoner is imprisoned for an offense which is no longer a crime.

However, in order to raise a claim of actual innocence under § 2241, the petitioner must first establish that he is entitled to review under § 2241 by meeting the Jones requirements.[14]

---

[13] The "gatekeeping" requirements provide that an individual may only file a second or successive §2255 motion if the claim sought to be raised presents:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. §2255; see Jones, 226 F.3d at 330.

[14] See Bousley v. United States, 523 U.S. 614, 623 (1998) (In order to "open the portal" to a § 2241 proceeding, the petitioner must first show that he is entitled to the savings clause of § 2255. Once those narrow and stringent requirements are met, the petitioner must then demonstrate actual innocence. Actual innocence means factual innocence, not mere legal insufficiency.); see also Herrera v. Collins, 506 U.S. 390, 404 (1993) ("A claim of 'actual

Accordingly, an examination of the Jones test is required to determine Petitioner's eligibility for relief.

## A. **First Prong of Jones Test**

The first prong of the Jones test addresses whether, "at the time of the conviction, settled law of this circuit or the Supreme Court established the legality of the conviction." In re Jones, 226 F.3d at 333-34. Here, Respondent contends that Petitioner cannot satisfy the first prong of the Jones test, because the law in the Fourth Circuit and even in the Supreme Court was unsettled at the time of his convictions.[15] ECF No. 11 at 7 – 9. Petitioner was convicted four and a half months after United States v. Santos[16] was decided by a fractured Supreme Court plurality of four justices and one concurring justice. Id. at 8. In accordance with Santos, Petitioner was convicted on the basis of jury instructions defining "proceeds" as "profits." Id. At the time of Petitioner's appeal, while the Fourth Circuit had yet to adopt a position on the issue in a published opinion, it did have an unpublished opinion holding that Santos only applied to illegal gambling operations.[17] Further, at the time of Petitioner's appeal, there was a five-way circuit

---

innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."); Royal v. Taylor, 188 F. 3d 239, 243 (4th Cir. 1999) (federal habeas relief corrects constitutional errors). Thus, a freestanding claim of actual innocence is not cognizable in federal habeas corpus and such claim should be dismissed.

[15] Respondent also argues that Petitioner was "not foreclosed from the opportunity to present" his Simmons claims both to the sentencing court and to the Fourth Circuit on direct appeal and failed to do so. Because Petitioner was sentenced on April 28, 2009, the opinion on his direct appeal was issued on December 23, 2010, and Simmons was not decided until December 11, 2013, this argument is inexplicable and unavailing and will be given no further analysis.

[16] United States v. Santos, 553 U.S. 507 (2008) (The Supreme Court, in a plurality decision addressing an illegal gambling operation, decided that "proceeds" as used in federal money laundering statute referred to "profits," not "gross receipts.").

[17] See United States v. Howard, 309 Fed. Appx 760, 771 (4th Cir. 2009).

split[18] of "widely divergent" views on the subject. Id.; see also United States v. Johnson, 405 Fed. Appx. at 749. Moreover, even the Simmons decision that Petitioner relies on describes the state of the post-Santos law on the issue as "murky" waters. ECF No 11 at 8; see also Simmons, 737 F.3d at 324.

In response, Petitioner denies that the law on the issue was unsettled at the time of his conviction. ECF No. 16 at 3.

In Santos, the law in effect when Petitioner was convicted, the defendants were convicted of conducting an illegal gambling business and of laundering the proceeds earned from it. In deciding Santos, a fractured Supreme Court four-justice plurality grappled with alternate definitions of "proceeds" as either "receipts" or "profits" of a crime, concluding that the term "proceeds" in the money-laundering statute was ambiguous because it could mean either "receipts" or "profits." Id. at 513 - 14. Invoking the rule of lenity and resolving the ambiguity in favor of Santos, ultimately it held that the term "proceeds" in the federal money laundering statutes referred to "profits," not "gross receipts." Id. at 523. In a concurrence, Justice Stevens concluded that "proceeds" could mean "profits" in some instances and "gross receipts" in others, but in Santos' case, it meant profits [id. at 525 – 26]. Further, Stevens addressed the merger

---

[18] At the time, the 4th, 8th, and 11th Circuits held that in light of Justice Stevens' concurrence, Santos defined "proceeds" as "profits" only when courts were presented with the particular facts of Santos, where the petitioners were convicted of laundering money from the "unlawful activity" of running an illegal gambling operation. United States v. Spencer, 592 F.3d 866, 879-80 & n.4 (8th Cir. 2010); United States v. Demarest, 570 F.3d 1232, 1242 (11th Cir. 2009); see also United States v. Howard, 309 F. App'x. 760, 771 (4th Cir. 2009) (unpublished). The 3rd and 7th Circuits concluded that Justice Stevens' concurrence indicated "proceeds" must be defined as "profits" any time the legislative history of the money-laundering statute does not affirmatively indicate otherwise. United States v. Lee, 558 F.3d 638, 643 (7th Cir. 2009); United States v. Yusuf, 536 F.3d 178, 186 n.12 (3rd Cir. 2008). Analogous to the first step of Justice Stevens' bifurcated rule, the 9th Circuit and, likely, the 1st Circuit held that "proceeds" must be defined as "profits" any time the "merger problem" articulated in Santos would result if "proceeds" is defined as "gross receipts." United States v. Van Alstyne, 584 F.3d 803, 814 (9th Cir. 2009); United States v. Bucci, 582 F.3d 108, 123-24 (1st Cir. 2009) (suggesting this interpretation in dicta). Finally, similar to both steps in Justice Stevens' rule, the 6th Circuit held that "proceeds' did not always mean profits, as Justice Scalia concluded; rather, it meant profits only when the § 1956 predicate offense created a merger problem that lead to a radical increase in the statutory maximum sentence and only when nothing in the legislative history suggests that Congress intended such an increase." United States v. Kratt, 579 F.3d 558, 562 (6th Cir. 2009).

issue, noting that "[t]he revenue generated by a gambling business that is used to pay the essential expenses of operating that business is not 'proceeds' within the meaning of the money laundering statute [because] [a]llowing the Government to treat the mere payment of the expense of operating an illegal gambling business as a separate offense is in practical effect tantamount to double jeopardy." Santos at 527 – 28. (Stevens, J., concurring). The four dissenting judges concluded that "proceeds" always meant "gross receipts."[19] Id. at 514 n.3. In rejecting a broader interpretation of the statute, the plurality determined that to construe "profits" as "receipts" would create a "merger problem" for statutes like the illegal gambling statute[20] at issue in the Santos case, because "[i]f 'proceeds meant 'receipts,' nearly every violation of the illegal-lottery statute would also be a violation of the money-laundering statue, because paying a winning bettor is a transaction involving receipts that the defendant intends to promote the carrying on of the lottery." Id. at 515. It reasoned that that those who run illegal gambling businesses must necessarily pay their accomplices and the lottery's winners; if a defendant could commit money laundering merely by "paying the expenses of his illegal activity," all illegal gambling businesses would involve money laundering, and a defendant could be punished twice for an offense that Congress intended to punish only once. Id. at 517. Therefore, interpreting "proceeds" to mean "profits" resolved the merger problem, because it ensured that a defendant could not be convicted of money laundering just for paying the essential "crime-related expenses" of his predicate crime. Id.

---

[19] In May of 2009, in the wake of Santos, the money laundering statute was amended to define "the term "proceeds" to mean any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." 18 U.S.C. § 1956(c)(9); see 18 U.S.C. § 1957(f)(3) (cross referencing § 1956(c)(9)). This amendment effectively "overruled" Santos. United States v. Simmons, 737 F.3d 319, 324 (4th Cir. 2013). However, because that amendment was not in effect at the time Petitioner committed the charged conduct, it will not be considered here.

[20] See 18 U.S.C. § 1955.

Predictably, after Santos was decided, circuit courts adopted widely differing views on Santos' precedential value.

Accordingly, the undersigned agrees with the Respondent, finding that the issue of law was indeed unsettled at the time Petitioner was convicted, and Petitioner has not carried his burden of meeting the first prong of Jones.

**B. Second Prong of Jones Test**

Even if the law were settled on this issue at the time of Petitioner's convictions, Petitioner cannot satisfy the second prong of Jones, under which a petitioner must show that "subsequent to the [petitioner's] direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the [petitioner] was convicted is deemed not to be criminal." In re Jones, 226 F.3d at 334. This prong requires not only that the substantive law has changed since the time of Petitioner's conviction, but also that the change has rendered his conduct non-criminal.

Here, Petitioner contends that in Simmons, the Fourth Circuit "reversed itself" from the position it held in its opinion on his appeal, holding that "the government is proscribed from a conviction of money laundering and a Ponzi scheme when the proceeds of the scheme were used to pay the expenses of the operation" and also "imposed an additional element of proof in its definition of a Ponzi scheme." ECF No. 1 at 9.

The Respondent argues that Simmons is not a substantive change in law; that at best, Simmons "proclaims a case-by-case analysis as to whether there is a Santos merger issue that would amount to something akin to double jeopardy." ECF No. 11 at 9. Moreover, Respondent points out that the Simmons decision did not make any substantive change to mail and wire fraud convictions relating to Ponzi schemes; to the contrary, it cited to its own 1997 definition of a

Ponzi scheme set forth in <u>United States v. Loayza</u>.[21] <u>Id.</u> at 10 – 11. It did not redefine a Ponzi scheme to render Petitioner's mail and wire fraud convictions non-criminal. <u>Id.</u> Petitioner was convicted of money laundering using the same definition of payments as "net profits" rather than expenses associated with the fraud, that he now urges be used. <u>Id.</u> at 9 – 10. Respondent argues that Petitioner should be estopped from arguing that his mail and wire fraud convictions should be overturned on the basis of <u>Simmons</u>, having previously conceded on direct appeal that his mail and wire fraud convictions should be affirmed. <u>Id.</u> at 10; <u>see also</u> <u>United States v. Johnson</u>, 405 Fed. Appx. at 749 n.2.[22] Finally, the Respondent notes that because Petitioner has concurrent sentences, he will spend no increased time in prison, thus there is no <u>Santos</u> merger issue. <u>Id.</u> at 11.

In response, Petitioner argues that the Fourth Circuit's 2013 decision in <u>United States v. Simmons</u> "overruled" the findings it made in his appeal [ECF No. 16 at 4], because it expanded the "predicate offense of money laundering to include a 'Ponzi' scheme operator and being convicted of both fraud and money laundering," and in doing so, created new Fourth Circuit law. <u>Id.</u>

The undersigned finds that Petitioner's attempt to invoke the holding in <u>Simmons</u> is misplaced.

In 2011, three years after <u>Santos</u> was decided, the Fourth Circuit examined Santos' applicability to health care fraud and money laundering in <u>United States v. Halstead</u>.[23] Halstead's fraud convictions stemmed from a scheme he devised to exploit his chiropractic patients'

---

[21] <u>United States v. Loayza</u>, 107 F.3d 257, 259 n.1 (4th Cir. 1997).

[22] " 'Johnson concedes, as he must, that even were we to adopt the legal theory that he espouses, seven of the money laundering counts should be affirmed. Additionally, Johnson does not challenge his convictions on the twenty mail and wire fraud counts that resulted in twenty concurrent sentences of 180 months."

[23] <u>United States v. Halstead</u>, 634 F.3d 270 (4th Cir. 2011).

healthcare benefits by creating sham medical diagnoses. Id. at 272-73. By contrast, his money laundering conviction arose from his depositing the illicit gains into his own bank account. Id. at 280-81. Like Petitioner here, Halstead argued that Santos prohibited his money laundering conviction, because transferring his ill-gotten gains into his own bank accounts constituted an essential expense of operating his healthcare fraud. Id.

In a subsequent money laundering conspiracy case, Hines v. Drew,[24] the Fourth Circuit noted that in deciding Halstead in 2011, it had first examined Santos' holding; relying on Marks v. United States,[25] it narrowly interpreted Santos to bind lower courts only in cases where illegal gambling was the predicate offense for a defendant's money laundering conviction. Hines, 634 Fed. Appx. at 923 (quoting Halstead, 634 F.3d at 279). Recognizing that the merger problem drove both the Santos plurality's and Justice Stevens's concurrence opinions, the Fourth Circuit felt compelled to construe the money laundering statute narrowly so as to avoid punishing a defendant twice for the same offense. Id. (quoting Halstead at 278 – 79). It decided that a defendant could not be convicted of money laundering merely "for paying the 'essential expenses of operating' the underlying crime." [Id. (citing Santos, 553 U.S. at 528 (Stevens, J., concurring)], but noted that if "the financial transactions of the predicate offense are different from the transactions prosecuted as money laundering," then there was no merger problem. Id. (quoting Halstead at 279–80).

Applying this reasoning to Halstead, the Fourth Circuit held that Halstead's money laundering conviction was not tainted by any merger problem, because his healthcare fraud was "complete" as soon as he received the illicit healthcare reimbursements. Id. at 280. Thereafter,

---

[24] Hines v. Drew, 634 Fed. Appx. 918 (4th Cir. Nov. 25, 2015).

[25] Marks v. United States, 430 U.S. 188 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'")

his transfer of these funds into his own account comprised an altogether "separate" offense that was properly prosecuted as money laundering. Id.

Two years later, in 2013, deciding Simmons, the Fourth Circuit held that when a defendant charged with wire fraud for operating a Ponzi scheme, and with money laundering for making payments to investors in connection with the Ponzi scheme, the conviction for money laundering merged with the conviction for wire fraud, because the payments to investors constitute "essential expenses" for carrying out the Ponzi scheme. Simmons, 737 F.3d at 328-329. Like with other cases interpreting Santos, Simmons' payments to investors were essential to both Simmons' fraud and money laundering offenses:

> The superseding indictment characterized the wire fraud offense as including transfers to "wire ponzi payment to investors and to their intermediaries in other states" — the very transactions that the Government later prosecuted as money laundering.

Id. at 326. The Simmons court noted that the payment of purported returns to early investors were "inherent" to the defendant's underlying scheme to defraud, concluding:

> Given this case's similarity to Santos, we must decline the Government's invitation to divide Simmons' Ponzi scheme into a successive series of past, present, and future frauds. Rather, Santos requires that we hold that Simmons's Ponzi scheme, like the lottery scheme in Santos, represented a single, ongoing enterprise that the defendant could sustain only by making limited payouts.

Id. at 327.

In ruling on Petitioner's appeal in December 2010, the Fourth Circuit first noted that it agreed with the government's position that Santos was a fractured Supreme Court decision that resulted in a limited rule of law that did not extend to Petitioner's case. See United States v. Johnson, 405 Fed. Appx. at 749. It then noted that at trial on the money laundering charges, consistent with the limitation espoused by the Santos majority, the district court instructed the jury that the term "proceeds" referred to the net profits of mail fraud, and that the expenses

associated with the mail fraud were not proceeds. See United States v. Johnson, 405 Fed. Appx. at 753 n.5. The Fourth Circuit further noted that Petitioner's verdict was likely "based on expert testimony indicating that Johnson's companies profited" in 2002 as they defrauded investors out of more money than they repaid."[26] Id. Finally, it opined that "the financial transactions that supported the [petitioner's] money laundering convictions involved criminally-derived proceeds of a completed offense, or at a minimum, a completed stage of an offense, as the funds at issue were obtained by Johnson through defrauding individual investors." Id. at 751.

Therefore, Petitioner's conspiracy to commit money laundering and substantive money laundering convictions are valid because the evidence at trial showed that they involved the "proceeds" of his Ponzi fraud scheme. The plurality opinion in Santos limits its holding that "proceeds" means "profits" to an illegal gambling case only. Petitioner's conspiracy conviction is unaffected by Santos because a money laundering conspiracy crime only requires that the defendant agree to launder profits and the evidence at trial showed that Petitioner intended to do so. Finally, as noted by Respondent *supra*, Petitioner's mail and wire fraud convictions were unaffected by Simmons, because in deciding Simmons, the Fourth Circuit relied on its 1997 definition of a Ponzi scheme from United States v. Loayza, 107 F.3d at 259 n.1, and did not redefine a Ponzi scheme so as to render Petitioner's mail and wire fraud convictions non-criminal. Moreover, Simmons did not "overrule" Petitioner's money laundering convictions, because the Fourth Circuit has repeatedly held that if "'the financial transactions of the predicate offense are different from the transaction prosecuted as money laundering' no merger problem arises." Simmons, 737 F.3d at 324 (quoting Halstead, 634 F.3d at 279-80); see also Hines v.

---

[26] Petitioner's payments to investors were not "essential" expenses of his Ponzi scheme because in most cases, he only paid investors after they demanded repayment; the jury could have found that Petitioner's scheme generated profits because he and his co-defendant took $1 million of the $5 million in investor funds for their personal use, and because the amount of the funds greatly exceeded the expenses necessary to operate the scheme.

<u>Drew</u>, 634 Fed. Appx. at 924. Likewise here, the financial transactions that supported Petitioner's money laundering convictions involved criminally-derived proceeds of a completed offense, or at a minimum, a completed stage of an offense, because the funds at issue were obtained by Johnson through defrauding individual investors.

Moreover, the <u>Santos</u> merger issue is also inapplicable in Petitioner's case because Petitioner's 20-year statutory maximum penalty for mail fraud[27] does not exceed the 20-year[28] and 10-year[29] statutory maximum penalties for money laundering. Cf. <u>United States v. Kratt</u>, 579 F.3d 558, 563 (6th Cir. 2009) (If a conviction does not subject a defendant to a markedly increased statutory maximum, there is no <u>Santos</u> merger.). Here, unlike in <u>Simmons</u>, where the defendant's money laundering sentence was partially-consecutive, Petitioner's sentences are all concurrent.

Therefore, even if Petitioner had been able to satisfy the first element of <u>Jones</u>, all of the crimes for which Petitioner was convicted remain criminal offenses, and thus, Petitioner cannot satisfy the second element of <u>Jones</u>. Because Petitioner clearly attacks the validity of his convictions, and fails to establish that he meets the <u>Jones</u> requirements, he has not demonstrated that § 2255 is an inadequate or ineffective remedy and has improperly filed a § 2241 petition.

## C. **Third Prong of Jones Test**

The third prong of the <u>Jones</u> test is that the "prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law." <u>In re Jones</u>, 226 F.3d at 334.

---

[27] <u>See</u> 18 U.S. Code § 1341, Frauds and swindles.

[28] <u>See</u> 18 U.S. Code § 1956, Laundering of monetary instruments.

[29] <u>See</u> 18 U.S. Code § 1957, Engaging in monetary transactions in property derived from specified unlawful activity.

Here, despite Petitioner's claims to the contrary, <u>Simmons</u> is not a new rule of constitutional law that was previously unavailable. <u>Simmons</u> is neither a Supreme Court decision, nor is it a new rule of constitutional law. Further, no court, let alone the Supreme Court, has ever held that the <u>Simmons</u> decision has been made retroactively applicable to cases on collateral review by the United States Supreme Court, enabling Petitioner to file a second or successive section 2255 motions under 28 U.S.C. § 2255(h)(2). Because Petitioner's claim rests on an interpretation of Fourth Circuit law rather than on a new rule of constitutional law, he cannot satisfy the gatekeeping provisions limiting second or successive § 2255 motions. <u>See</u> <u>In re Jones</u>, 226 F.3d at 329. Therefore, as discussed above, because Petitioner's claim does not satisfy any of the three prongs of the <u>Jones</u> test, he cannot rely on the savings clause of § 2255 and he has improperly filed a § 2241 petition.[30]

**D. <u>Actual Innocence</u>**

Even if Petitioner could satisfy all three prongs of the <u>Jones</u> test, thereby entitling him to proceed by way of a § 2241 petition, his petition would still fail because he cannot establish his actual innocence. Mail fraud, wire fraud, money laundering conspiracy, and money laundering all remain crimes, pursuant to 18 U.S.C. §§1341 and 2; 18 U.S.C. §§ 1343 and 2; 18 U.S.C. § 1956(h); 18 U.S.C. §§1956(a)(1)(B)(i) and 2 18 U.S.C. §§ 1957 and 2; 15 U.S.C. §§ 78j(b), 78ff and 18 U.S.C. § 2.

**V. <u>Recommendation</u>**

---

[30] Moreover, because Petitioner did not file this § 2241 until November 12, 2015, one year and eleven months after <u>Simmons</u> was decided, even if <u>Simmons</u> had been a new rule of constitutional law made retroactively applicable to cases on collateral review, he would still have been barred from relief. Pursuant to 18 U.S.C. § 2255(f)(3), which gives § 2255 applicants one year from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[,]" Petitioner would have had to have raised his <u>Simmons</u> claim by December 11, 2014 for it to have been timely.

For the foregoing reasons, the undersigned recommends that the Respondent's Motion to Dismiss [ECF No. 10] be **GRANTED** and the petition [ECF No. 1] be **DENIED and DISMISSED with prejudice.**

**Within fourteen (14) days** after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

**The Clerk of the Court is directed to correct the docket to reflect the name of Jennifer Saad as respondent instead of Charles Williams.** The Clerk is further directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, at his last known address as reflected on the docket sheet, and to transmit a copy electronically to all counsel of record.

DATED: September 27, 2016

/s/ James E. Seibert_____
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE